UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIAS A. WORKNEH,

                Plaintiff,

      – against–

SUPER SHUTTLE INTERNATIONAL, INC.,
VEOLIA TRANSPORT, and NEW YORK CITY
AIRPORTER,

              Defendants.

**OPINION AND ORDER**

15-CV-3521 (ER)

Ramos, D.J.:

     *Pro se* plaintiff Elias A. Workneh ("Plaintiff" or "Workneh") brings this suit against

defendants Super Shuttle International, Inc. ("Super Shuttle"), Veolia Transport (Veolia), and

New York City Airporter ("Airporter," and collectively "Defendants"), alleging employment

discrimination on the basis of his race, color, and national origin, and retaliation for complaining

about said discrimination, all in violation of Title VII of the Civil Rights Act of 1964, New York

State Human Rights Law ("NYSHRL"), and New York City Human Rights Law, ("NYCHRL").

Doc. 28.  He also alleges a violation of the Family Medical Leave Act ("FMLA").  *Id.*

Defendant Super Shuttle[1] now moves to dismiss the Amended Complaint pursuant to Rule

12(b)(6) and 12(c) of the Federal Rules of Civil Procedure.  Doc. 31.  For the reasons discussed

below, Super Shuttle's motion to dismiss is GRANTED in part and DENIED in part.

---

[1] Defendants, Airporter and Veolia, who were served only recently—on June 8 and July 1, 2016, respectively—have
also moved to dismiss.  Doc. 61.  That motion is not yet fully briefed, however.

## I.   Background

Plaintiff's submissions are poorly written and poorly organized.  However, the Court remains obligated to construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest.  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue."  *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). With these principles in mind, the Court accepts the following allegations from the Amended Complaint ("Am. Compl.") (Doc. 28), Plaintiff's Affirmation in Opposition to Motion ("Pl. Aff.") (Doc. 35), and Plaintiff's supplemental response in opposition to the motion ("Pl. Supp. Resp.") (Doc. 36), as true for purposes of this motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a *pro se* plaintiff's opposition memoranda are consistent with the allegations contained in the Complaint, they may be read as supplements to the pleadings.") (citation omitted).  In addition, the Court considers Plaintiff's filings with the Equal Employment Opportunity Commission ("EEOC").  *See Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) ("In reviewing a Rule 12(b)(6) motion to dismiss, 'it is proper for this court to consider the plaintiff[']s relevant filings with the EEOC and other documents related to plaintiff's claim, even if they are not attached to the complaint, so long as those filings are either 'incorporate[d] by reference' or are 'integral to' and 'solely relie[d]' upon by the complaint.") (citation omitted).

2

Plaintiff is a black, Ethiopian male.  Am. Compl. at 2.[2]  He began working for Super Shuttle as a transport operations manager at the Grand Central Station/Port Authority Bus Terminal ("GCS/PABT") location in Manhattan on December 20, 2010.  Pl. Aff. at 24. Workneh's shift at GCS/PABT was from 4:30 a.m. to 3:00 p.m.  *Id.*  He was one of six supervisors at Super Shuttle's three locations, which in addition to GCS/PABT, included Kennedy and LaGuardia Airports.  *Id.*  According to Workneh, "management" promised that as the operations grew, the supervisors would receive bonuses and promotions.  *Id.*  In addition, management training for the supervisors was provided, or was to be provided, at City University of New York.  *Id.*

As best as the Court can discern from his submissions, Workneh began experiencing difficulties at the GCS/PABT related to unlicensed livery drivers affiliated with an entity called NYAS.  *Id.*  Certain NYAS drivers trespassed and engaged in physical violence with Workneh and his Super Shuttle colleagues, presumably in an effort to compete for passengers.  Workneh asserts that a fellow Super Shuttle supervisor, Ms. Eva Walder, even had to obtain a restraining order against a NYAS driver, who physically assaulted her.  *Id.* at 25.  Notwithstanding the apparent conflict, Workneh alleges that, beginning in 2012, Defendant began hiring NYAS workers and put one of them, a Mr. Charles, in charge of supervising Workneh.  *Id.*  The former NYAS employees then began targeting the Super Shuttle employees with more seniority, including Workneh.  For example, Workneh alleges that Mr. Charles screamed at him, insulted him publicly, and wrongly accused Workneh of showing "favoritism to [an] individual who share[d] the same origin."  *Id.*

---

[2] Due to Plaintiff's failure to number the paragraphs of the Amended Complaint or his other submissions, the Court will refer to the pagination of his filings on the ECF system.

The particular individual who shared the "same origin" as Workneh was Mr. Eugene. *Id.* Workneh justified his treatment of Mr. Eugene by pointing out that he was an exemplary employee who was always on time and that, in any event, as a U.S. Army Reservist, Mr. Eugene was getting deployed soon and so the situation would not continue. *Id.* However, because it was a "serious accusation," Workneh reported it to training manager Bill Kowaliski and general manager Luis Sanson. *Id.* Mr. Charles found about Workneh's report and became angry with him and the situation escalated. *Id.* A meeting was subsequently called that included Kowaliski, Sanson, Mr. Charles, and Plaintiff. Kowaliski and Sanson determined that Mr. Charles' accusation was false, and advised Mr. Charles to work with Workneh. *Id.* However, the confrontations with Mr. Charles and with NYAS personnel continued throughout the year and began to escalate in late 2012. *Id.* at 26.

Workneh describes an incident in December 2012 involving a Super Shuttle employee and a NYAS employee that resulted in the Super Shuttle employee filing a police report. *Id.* A Mr. Jimmy, from NYAS began showing up at the GCS/PABT location to confront and harass Workneh. *Id.* Mr. Charles was not helpful, and in fact, warned Workneh that Mr. Jimmy is "the friend of big bosses" and that the NYAS employees might retaliate against Workneh if one of them is imprisoned. Pl. Supp. Resp. at 9.

Ultimately, in 2013 Workneh became sick[3] and had to go to the emergency room. Pl. Aff. at 26. Despite the fact that he was ordered to stay home for three weeks to recover, he was directed to come in to work at times. *Id.* at 26-27; *see also id.* at 29 (noting that "a couple of times in 2013," he requested sick leave but was denied by Sanson, and so he went to work while taking over the counter medication).

---

[3] The exact nature of Workneh's illness is not provided.

4

The "last incident" Workneh describes at the GCS/PABT location involved a discussion he had with Mr. Charles concerning staffing and attendance issues, and an issue concerning an employee named Marshal Kenneth.  Kenneth was the supervisor for the afternoon shift, which ends at 11:00 p.m.  Pl. Supp. Resp. at 38.  According to Workneh, on more than two occasions he found Kenneth sleeping in the Super Shuttle makeshift office when he arrived for work before 4:30 a.m., meaning that Kenneth had spent the night in the office.  Workneh reported Kenneth. *Id.*  However, Mr. Charles defended Kenneth and directed Workneh not to use the makeshift office.  *Id.*

Approximately one week later, for reasons that are not made clear in the record, in approximately May or June 2013, Workneh was directed to report to the main office in LaGuardia, and meet with Kowaliski, Sanson, and Ms. Cynthia Bristole, a Human Resources Generalist.  Pl. Aff. at 27-28.  Workneh was given a warning letter that stated that "it has come[] to [Defendant's] attention that there may be some issues on [sic] your supervision style" and informed him that he was being transferred to LaGuardia immediately.  *Id*.  However, when he inquired as to what those issues were, they were unable to tell him.  *Id*. at 28.  According to Plaintiff, the phrase in the letter "there may be some issues on your supervision style," was a "vague term" which he considered to be a "proxy" for discrimination.  *Id*.

Workneh asserts upon information and belief, that after he was transferred to LaGuardia, Mr. Charles told other employees at GCS/PABT that "It [took] us a long time but we finally . . . took that _____ out from the city," using a degrading word.  *Id*.  In addition, after his transfer, Workneh alleges that his work hours were cut substantially.  *Id*.

On June 28, 2013, Workneh put in a request to take two weeks' accrued vacation, from July 7 to July 24, 2013.  Am. Compl. at 9.  The next day, he received an email from Sanson, who

was himself on vacation, asking Workneh if he could push his vacation back one week, to begin

on July 14. *Id.* at 11. Workneh replied that he could not postpone his vacation because he was

scheduled to have a "post-surgery appointment"[4] that week. *Id.* According to Workneh, Sanson

accepted his response and scheduled his vacation as requested. *Id.*

On July 15, 2013, while he was on vacation, Workneh filed a complaint with the EEOC

(the "July 15 EEOC Complaint")[5] alleging discrimination and retaliation. *Id.* After filing the

July 15 EEOC Complaint, but before his scheduled vacation ended, Workneh visited his

workplace to drop off documentation from a doctor's visit needed for a medical leave. *See*

Declaration of Thomas C. LaVoy in Support of Defendant Super Shuttle International, Inc.'s

Motion to Dismiss ("LaVoy Decl.") (Doc. 33), Exhibit C (EEOC Charge of Discrimination filed

by the Plaintiff with the EEOC on March 28, 2014 (the "March 28 EEOC Complaint")). During

that visit, Workneh was advised that his vacation had not, in fact, been authorized, and he was

directed not to report to work until he was contacted by the Defendant. *Id.* Workneh was never

again contacted by Super Shuttle, or sent a schedule to return to work. *Id.* It was not until

August 20, 2013 when he went to his workplace to inquire about when he would be returning to

work that he was told by Bristole he had been terminated. *Id.*

He was terminated on August 14, 2013, approximately one month after he filed the July

15 EEOC complaint. LaVoy Decl. Ex. C. Workneh attaches to his Amended Complaint an

internal Super Shuttle document from Bristole to Judy James. Am. Compl. 16-17. It is evident

from that document, that at some point after Workneh filed the EEOC complaint, but while he

---

[4] Workneh does not otherwise mention any surgery he had to undergo during this period, nor does he describe his
illness or attendant diagnosis in any way.

[5] The July 15 EEOC Complaint was closed two weeks later, on July 29, 2013, "in a favorable ruling for Super
Shuttle." LaVoy Decl. Ex. 3.

was still on vacation, Super Shuttle actually received a notice from the EEOC that a complaint had been filed.  Workneh claims that Super Shuttle retaliated against him for filing the EEOC complaint by terminating him.

In sum, during the course of his employment, Plaintiff appears to allege that he was subjected to insulting and offensive language and physical threats.  Pl. Aff. at 16.  He also alleges that he was exposed to an "unsafe place or system of work," and was assaulted by a manager who used derogatory and degrading language.  *Id.*  In regard to his FMLA claims, Plaintiff alleges that on several different occasions, his requests for medical leave were ignored or denied.  *Id.* at 17.  He alleges that the foregoing constituted a "clear pattern" of FMLA violations from approximately January to July 2013.  *Id.*

At some point after his termination, Workneh applied for unemployment benefits and Super Shuttle disputed his entitlement to them.  LaVoy Decl. Ex. C.  Bristole reported to the New York State Department of Labor that Super Shuttle never intended to fire Workneh, but they fired him for job abandonment because he never returned on July 24, 2013, at the end of his vacation as required.  *Id.*  Workneh asserts that Super Shuttle's position is undercut by the fact that he actually visited the workplace during his vacation, and he was paid for the entirety of his requested vacation.  *Id.*  The Department of Labor found that Workneh was not terminated for misconduct because he was not on "unapproved leave; rather, he was on a vacation previously requested that had not been denied."  *Id.*

On March 28, 2014, after the favorable decision from the Department of Labor, Workneh, through counsel, filed a demand letter to Defendant to settle before filing again with the EEOC for retaliation and wrongful termination.  *Id.* at 30.  Defendant refused to settle and Workneh filed a second compliant with the EEOC (the "March 28 EEOC Complaint"); this one

7

alleging only retaliation, not discrimination. *Id.*; *see also* LaVoy Decl. Ex. C.  Approximately

ten months after the filing of the March 28 EEOC Complaint, on January 30, 2015, the EEOC

issued Plaintiff a right to sue letter.  Am. Compl. at 13.  The instant action followed.

## II.    Procedural History

Plaintiff timely filed his initial Complaint on April 24, 2015 ("Compl.").  Doc. 2.  It was

submitted on a form made available by the Court for *pro se* litigants on which he checked off

that Defendants discriminated against him on the basis of his race, color and national origin by

(1) failing to promote him; (2) retaliating against him; (3) terminating him; and (4) creating a

hostile work environment, all in violation of Title VII and the NYCHRL.  Compl. at 2-3.  He

also alleged violation of the FMLA.  *Id.* at 3.  The Complaint only named Super Shuttle and

Airporter as defendants, and did not request a trial by jury.  *Id.* at 1.  On June 19, 2015, prior to

Defendant being served, Plaintiff filed a "Notice of Motion to Amendment," seeking leave to

amend the Complaint to add Veolia as a defendant, to request a trial by jury, and to allege a

violation of the NYSHRL.  Doc. 9.  The Court granted the motion at a hearing on December 8,

2015, and the Amended Complaint was docketed on December 11, 2015.  Doc. 28.

The instant motion was filed on January 12, 2016.  Doc. 31.  Plaintiff responded by

"Affirmation" on February 16, 2016 (Doc. 35) and supplemented his response on February 25,

2016.  Doc. 36.  Defendant's Reply was filed on March 7, 2016.  Doc. 39.

## III.    Discussion

### A.  Rule 12(b)(6) Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

the court must accept all factual allegations in the complaint as true and draw all reasonable

inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotation marks omitted).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims.  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The same standard applies to motions to dismiss *pro se* complaints.  *See Zapolski v. Fed. Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011).  While the Court is duty-bound to

9

construe a *pro se* complaint liberally, *Curcione*, 657 F.3d at 122, even *pro se* plaintiffs asserting

civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual

allegations sufficient to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

555.  A *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-

unlawfully-harmed me accusation." *Iqbal*, 566 U.S. at 678.  A complaint that "tenders naked

assertion[s] devoid of further enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at

557) (internal quotation marks omitted); *see also Triestman*, 470 F.3d at 477 ("[P]*ro se* status

'does not exempt a party from compliance with relevant rules of procedural and substantive

law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  Additionally, as mentioned

above, "[a] district court deciding a motion to dismiss *may* consider factual allegations made by a

*pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir.

2013) (emphasis added).

## B.  Claims Pursuant to Title VII

### 1.  Plaintiff's Title VII Discrimination Claims are Time Barred

Defendant argues that Plaintiff's Title VII claims for discrimination should be dismissed

as time-barred.[6]  Under Title VII, a claim must be filed in federal court within 90 days of the

plaintiff's receipt of a right to sue letter from the EEOC.  *See* 42 U.S.C. § 2000e-5(f)(1)

(providing that a Title VII action must be brought within ninety days of notification of right to

sue); *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011)

(same).

---

[6] As discussed below, Defendant does not challenge the timeliness of the suit filed subsequent to issuance of the right to sue letter in connection with the March 28 EEOC Complaint, which only alleges retaliation.

Here, Plaintiff alleged in his July 15 EEOC Complaint that he was discriminated against on account of his race, color, and national origin.  He received the right to sue letter on those claims on July 29, 2013.  This action was commenced on April 24, 2015, well over the 90-day limit.  Accordingly, Defendant's motion to dismiss the Title VII discrimination claims is GRANTED with prejudice.

### 2.  Plaintiff has Sufficiently Pled the Title VII, NYSHRL and NYCHRL Retaliation Claims

As the Second Circuit recently explained in *Littlejohn v. New York City*, 795 F.3d 297, 315-16 (2d Cir. 2015), retaliation claims pursuant to Title VII are analyzed under the *McDonnell Douglas*[7] burden-shifting evidentiary framework.  *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  Section 704(a) of Title VII includes an anti-retaliation provision that makes it

---

[7] Title VII claims for retaliation are properly analyzed under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (applying McDonnell framework to retaliation claim).  Under the *McDonnell Douglas* framework, a plaintiff alleging discrimination under Title VII must first demonstrate a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  The Second Circuit has explained that a plaintiff's burden at this stage is *de minimus*.  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001).  Nonetheless, in order to state a *prima facie* case for discrimination, "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive," *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), and "cannot meet [its] burden through reliance on unsupported assertions."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

If a plaintiff successfully presents a *prima facie* case of discrimination, the defendant must then rebut the presumption by offering legitimate and non-discriminatory reasons for the adverse employment action demonstrated in plaintiff's *prima facie* case.  *Abdu-Brisson*, 239 F.3d at 468 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  "The employer need not persuade the court that it was motivated by the reason it provides; rather it must simply articulate an explanation that, if true, would connote lawful behavior."  *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) (emphasis in original).  To satisfy the second step of *McDonnell Douglas*, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  *Burdine*, 450 U.S. at 254.  "If the defendant carries this burden of production, the presumption [of discrimination] raised by *the prima facie* case is rebutted," and "drops from the case."  *Id.* at 255 n.10.  Under the third step of the *McDonnell Douglas* framework, the burden then shifts back to the plaintiff to prove intentional discrimination by a preponderance of the evidence.  *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 121 (2d Cir. 1997).  It is important to note that courts must review a plaintiff's evidence at this step "as a whole" rather than in a piecemeal fashion.  *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001).  "No one piece of evidence need be sufficient, standing alone, to permit a rational finder of fact to infer that a defendant's employment decision was more likely than not motivated in part by discrimination."  *Walsh v. N.Y. City Housing Authority*, 2016 WL 3632245, at *3 (2d Cir. July 7, 2016).

unlawful "for an employer to discriminate against any . . . employee[ ] . . . because [that individual] opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII investigation or proceeding.  42 U.S.C. § 2000e–3(a).  To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Hicks*, 593 F.3d at 164 (internal quotation marks omitted).  The allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation.

Retaliation claims brought pursuant to the NYSHRL and the NYCHRL are also analyzed under the *McDonnell Douglas* burden-shifting framework.  *See, e.g., Borski v. Staten Island Rapid Transit*, No. 09 Civ. 4916, 413 F. App'x. 409, 410 (2d Cir. 2011) ("We analyze both federal and state law retaliation claims under the familiar burden-shifting approach of *McDonnell Douglas Corp. v. Green.*"); *Stavis v. GFK Holding, Inc.*, 769 F. Supp. 2d 330, 339 (S.D.N.Y. 2011) ("Retaliation claims arising under the NYSHRL and the NYCHRL are also analyzed using the *McDonnell Douglas* framework.")

Here, Workneh easily meets his burden.  First, there is no question that by filing an EEOC complaint, he was engaged in protected activity.  *See Mabry v. Neighborhood Defender Service,* 769 F. Supp. 2d 381, 396 (S.D.N.Y. 2011) ("It is well established that the filing of an EEOC complaint is a protected activity.") (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  Second, Plaintiff also adequately alleges that Defendant was aware of the

filing. In fact, he attaches an internal Super Shuttle document that acknowledges receipt of the notice of the July 15 EEOC Complaint. Am. Compl. at 16. Though Defendant denies knowledge and asserts that "Super Shuttle was never served with a copy of the charge," LaVoy Decl. ¶ 2, in the context of a motion to dismiss, the Court is required to accept the facts in the Amended Complaint as true. Third, it is clear that Workneh suffered an adverse employment action: he was fired. *See Chung v. City of New York*, 605 F. App'x. 20, 22 (2d Cir. 2015) (noting that adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits").

Finally, a causal inference can be inferred given that Plaintiff's termination followed closely on the heels of when he alleges Defendant found out about the protected activity – he was fired within a month of the filing of the July 15 EEOC Complaint. "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). A plaintiff may establish the causal connection requirement either directly, by offering evidence of retaliatory animus, or indirectly, by demonstrating that the protected activity was followed in close proximity by the adverse treatment. *Sumner v. Postal Service*, 899 F.2d 203, 209 (2d Cir. 1990). Where a "plaintiff relies exclusively on timing to plead causation, the temporal proximity between the protective activity and adverse employment action must be 'very close.'" *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 441 (E.D.N.Y. 2015) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). "[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months

13

between the protected activity and the adverse employment action does not allow for an inference of causation." *See Galimore v. City Univ. of N.Y. Bronx Cmty. College*, 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009) (citing *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007). Here, the fact that Plaintiff was fired within four weeks of filing the July 15 EEOC Complaint plausibly establishes the necessary causal connection.

Accordingly, Defendant's motion to dismiss Plaintiff's retaliation claims under Title VII, the NYSHRL and the NYCHRL is DENIED.

### C. State Law Discrimination Claims

The Amended Complaint also alleges violations of the NYSHRL and NYCHRL. Defendant argues that they are not sufficiently pled. The Court agrees.

#### 1. NYSHRL

To establish a *prima facie* case for employment discrimination under NYSHRL, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *Soloviev v. Goldstein,* 104 F. Supp. 3d 232, 247 (E.D.N.Y. 2015). Here, Plaintiff clearly satisfies the first element, in that he is a black Ethiopian male, and thus in a protected class.

He also provides sufficient information to suggest that he was performing his job competently. For example, he discusses an incident at the end of March 2013 wherein various managers, including Sanson, Kowaliski and Bristole were able to observe Workneh performing at the GCS/PABT location while they were shorthanded. After working through these challenging conditions, Kowaliski thanked Workneh and told him "we know that you are doing

14

[a] good job in the city operation."  Pl. Aff. at 27.  In addition, Workneh notes that after he was

transferred to LaGuardia Airport, the supervisor who replaced him at GCS/PABT found the

location too challenging and was terminated within three weeks.  *Id*. at 28.  That person, in turn,

was replaced by a ticket agent with no supervisory experience.  *Id*.  The Court finds these

allegations sufficient, at this juncture, to satisfy Plaintiff's burden.

The third element is also clearly satisfied in that he was terminated.  However, Plaintiff's

allegation are not sufficient to find that his termination took place under circumstances giving

rise to the inference of discrimination.  "The *sine qua non* of a ... discriminatory action claim

under Title VII is that the discrimination must be because of [the protected characteristic]."

*Bivens v. Inst. for Cmty. Living, Inc*., No. 14 Civ. 7173, 2015 WL 1782290, at \*7 (S.D.N.Y. Apr.

17, 2015) (Engelmayer, J.) (internal quotation marks omitted) (emphases in original) (citing

*Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).

> As the Second Circuit has explained, it is well settled that an inference of
> discriminatory intent may be derived from a variety of circumstances, including,
> but not limited to:  the employer's criticism of the plaintiff's performance in [ ]
> degrading terms [related to the protected characteristic]; or its invidious
> comments about others in the employee's protected group; or the more favorable
> treatment of [similarly situated] employees not in the protected group; or the
> sequence of events leading to the plaintiff's discharge.

*Id*. at \*8 (internal quotation marks, ellipses, and citations omitted).  Such circumstances can

include "actions or remarks made by decision makers that could be viewed as reflecting

discriminatory animus."  *LaSalle v. City of N.Y.*, No. 13 Civ. 5109, 2015 WL 1442376, at \*2

(S.D.N.Y. Mar. 30, 2015) (Crotty, J.) (internal quotation marks and citation omitted).  "If there is

no direct evidence of an employer's discriminatory intent, [p]laintiff then has to show that the

employer treated plaintiff less favorab[ly] than a similarly situated employee outside his

protected group but who is similar in all material respects to the individual whom he seeks to

compare himself with." *Doroz v. Tect Utica Corp.*, No. 12 Civ. 391, 2015 WL 1897134, at *7

(N.D.N.Y. Apr. 27, 2015) (D'Agostino, J.) (internal quotation marks and citations omitted).

No such discriminatory inference can be drawn from the facts presented.  To be sure,

Plaintiff describes a workplace that is at best unpleasant, and at worst dangerous.  But almost the

entirety of what he describes concern issues relating to the work site itself, the conditions and

hours of his employment, and the constant threat of the NYAS employees.  None of those

circumstances does Plaintiff even attempt to attribute to his race, color, or national origin.

Assessing the facts in the light most favorable to Workneh, he describes three instances

of arguably discriminatory conduct.  First, he alleges that Mr. Charles criticized him for showing

favoritism to an employee who shared "the same origin."  Pl. Aff. at 25.  However, even

assuming it to be true, this statement is not discriminatory, but rather accuses *Plaintiff* of

discriminating.

Secondly, he asserts that after he was transferred to LaGuardia, Mr. Charles was heard to

say "It [took] us a long time but we finally . . . took that _____ out from the city," and used a

"degrading word."  *Id.* at 28.  Workneh does not tell us what word was actually used, and it

would require rank speculation for the Court to presume that the blank should be filled in with a

racially derogatory word, or one alluding to Plaintiff's color or national origin.

Finally, Plaintiff alleges that when he was transferred to LaGuardia, he was given a

warning letter that stated that "there may be some issues on [sic] your supervision style."  *Id.*

Plaintiff asserts that it is a "vague term" and alleges that it is "proxy" for discrimination.  *Id.*

This assertion is purely conclusory, however.  Plaintiff provides no context from which it would

be fair to infer that the criticism of his supervisory style is based on his race, color or national

origin.  *See Soloviev*, 104 F. Supp. 3d at 247 ("[N]aked assertions of discrimination without any

16

specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss.") (internal ellipses, quotation marks, and citations omitted).

Accordingly, the Defendant's motion to dismiss Plaintiff's claims under the NYSHRL is GRANTED.

### 2. NYCHRL

Unlike Title VII and NYSHRL claims, "NYCHRL claims ... are reviewed independently from and more liberally than their federal and state counterparts." *LaSalle*, 2015 WL 1442376 at *3 (internal quotation marks and citation omitted). This means a complaint may fail to state a claim under Title VII and the NYSHRL but still be allowed to proceed under the NYCHRL. However, a complaint alleging a NYCHRL claim must still allege facts on the basis of which a court can find differential treatment—*i.e.* the plaintiff was "treated less well—because of a discriminatory intent." *Id.* at *5–*6 (citations omitted).  Courts must be mindful that the NYCHRL is not a general civility code; the plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive, *i.e.*, because of the protected characteristic. *See Soloviev*, 104 F. Supp. 3d at 247.

Workneh's allegations fail to meet even this more liberal burden.  As discussed above, Plaintiff has failed to allege that his termination was caused by a discriminatory motive on the basis of his race, color, or national origin.  Accordingly, the Defendant's motion to dismiss Plaintiff's claims under the NYCHRL is GRANTED.

**D. Family Medical Leave Act**

Plaintiff alleges that he was denied sick leave on a number of occasions and asserts that Defendant's conduct in refusing his various requests constitute "a clear pattern" of FMLA violations from January to July 2013.  Pl. Aff. at 17.

The FMLA prohibits an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the statute.  29 U.S.C. § 2615(a)(1).  To this end, "[t]he FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights."  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (citing *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003)).  In order to establish a *prima facie* case for interference under the FMLA, Workneh must establish "'(1) that he is an "eligible employee" under the FMLA; (2) that Defendant is an employer under the FMLA; (3) that he was entitled to leave under the FMLA; (4) that he gave notice to Defendant of his intention to take leave; and (5) that Defendant denied him benefits to which he was entitled by the FMLA.'" *Kennebrew v. N.Y. City Hous. Auth.*, No. 01 Civ. 1654, 2002 WL 265120, at *19 (S.D.N.Y. Feb. 26, 2002) (Peck, Magistrate J.) (quoting *Santos v. Knitgoods Workers' Union*, No. 99 Civ. 1499, 1999 WL 397500, at *3 (S.D.N.Y. June 15, 1999) (Jones, J.)).

Here, Workneh has made no allegation that he was an eligible employee entitled to FMLA leave, or that Defendant was an employer within the terms of the statute.  Accordingly, Defendant's motion to dismiss the FMLA claim is GRANTED.

18

### E.  Leave to Amend

The Second Circuit has instructed Courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal quotation marks omitted).  Here, while the Court has already granted Plaintiff the opportunity to amend his original Complaint, it was not in the context of a motion to dismiss and the Court has therefore not provided guidance as to how his claims may be adequately made.  In *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities*, LLC, 797 F.3d 160 (2d Cir. 2015), the Second Circuit reaffirmed that the "liberal spirit" of the Federal Rule of Civil Procedure 15 embodies a "strong preference for resolving disputes on the merits."  *See id*. at 190-91 (quoting *Williams v. Citigroup Inc*., 659 F.3d 208, 212-13 (2d Cir. 2011)).  *Loreley* thus counsels strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Id*. at 190-91.

As it is not apparent that any further opportunity to amend would be futile, the Amended Complaint is dismissed without prejudice.

### IV.  Conclusion

For the reasons set forth above, Defendant's motion to dismiss is GRANTED in part and DENIED in part.  Specifically:

- The Title VII discrimination claims are dismissed with prejudice;

- The motion to dismiss the Title VII, NYSHRL and NYCHRL retaliation claims is DENIED;

- The NYSHRL and NYCHRL discrimination claims are dismissed without prejudice; and

- The FMLA claim is dismissed without prejudice.

Plaintiff may file a Second Amended Complaint, titled as such, asserting (1) the Title VII, NYSHRL and NYCHRL retaliation claims, (2) the NYSHRL and NYCHRL discrimination claims, and (3) the FMLA claim.[8]  If the Plaintiff chooses to file a Second Amended Complaint, he must do so by **November 4, 2016**.  Otherwise, the matter will go forward only with respect to the retaliation claims.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 31, and to mail a copy of this Opinion and Order to Plaintiff.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated:      September 30, 2016
            New York, New York

                                                  Edgardo Ramos, U.S.D.J.

---

[8] In Plaintiff's Affirmation in Opposition to Motion, Doc. 35, he also suggests that Defendant's actions violated the Fair Labor Standards Act.  Pl. Aff. at 31.  However, Plaintiff made no allegations in any of his various submissions concerning the pay he received for the hours he worked.  Accordingly, the Court did not address that potential claim, and expresses no opinion concerning whether such claim would be colorable.

20