UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELIAS A. WORKNEH,

                              Plaintiff,

          – against–

SUPER SHUTTLE INTERNATIONAL, INC.,
VEOLIA TRANSPORT, and NEW YORK CITY
AIRPORTER,

                              Defendants.

**OPINION AND ORDER**

15 Civ. 3521 (ER)

---

Ramos, D.J.:

    *Pro se* plaintiff Elias A. Workneh ("Plaintiff" or "Workneh") brings this suit against defendants Super Shuttle International, Inc. ("Super Shuttle"), Veolia Transport ("Veolia"), and New York City Airporter ("Airporter," and collectively "Defendants"), alleging employment discrimination on the basis of his race, color, and national origin, and retaliation for complaining about said discrimination, all in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law("NYCHRL"), and violations of the Family Medical Leave Act ("FMLA").  In his original and Amended Complaints, Workneh also asserted that the alleged discriminatory actions by his employer violated Title VII of the Civil Rights Act of 1964.  However, by Opinion and Order filed on September 30, 2016 (the "September 30 Order"), the Court dismissed Plaintiff's Title VII discrimination claims against defendant Super Shuttle[1] with prejudice because Plaintiff failed to bring suit within 90 days of

---

[1] At the time of the issuance of the September 30 Order, Defendants Veolia and Airporter had just recently been served and, although they also filed a motion to dismiss, their motion was not yet fully briefed.

the issuance of the right to sue letter by the EEOC. *See* September 30 Order, Doc. 68, at 10-11. In the September 30 Order, the Court also determined that Plaintiff had adequately pleaded his retaliation claim, but dismissed the NYSHRL, NYCHRL, and FMLA claims without prejudice, granting Plaintiff until November 4, 2016 to file a second amended complaint. *Id.* at 19-20.

Plaintiff filed his Second Amended Complaint ("SAC") on November 4, 2016. Doc. 74. Currently pending before the Court are two motions: Defendants Veolia and Airporter's motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, Doc. 61, and all Defendants' motion to dismiss all of the claims in SAC, except the retaliation claim, Doc. 81. For the reasons set forth below, the motion to dismiss the discrimination claims is denied with prejudice, and the FMLA claim is dismissed without prejudice.

I. **Background**

The facts alleged by the Plaintiff are set forth in detail in the September 30 Order and will not be repeated here.[2] As relevant to the instant motions, in his opposition to Defendants' Motion to Dismiss, Plaintiff clarifies two incidents that he argues establish that his termination took place under circumstances that give rise to the inference of discrimination. First, he states

---

[2] As the Court previously noted, Plaintiff's submissions are poorly organized and difficult to understand. However, the Court remains obligated to construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). Additionally, and contrary to Defendants' arguments, "[a] district court deciding a motion to dismiss *may* consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (emphasis added); see also *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a *pro se* plaintiff's opposition memoranda are consistent with the allegations contained in the Complaint, they may be read as supplements to the pleadings.") (citation omitted). With these principles in mind, the Court accepts the allegations contained in the following submissions as true for purposes of this motion: the SAC; Plaintiff's Opposition to Defendants Veolia and Airporter's Motion to Dismiss (Doc. 73); Plaintiff's Amended Opposition to Defendants Veolia and Airporter's Motion to Dismiss (Doc. 76); Plaintiff's Opposition to Defendants' Motion to Dismiss (Doc. 84); and Plaintiff's Supplemental Submission in Opposition to Defendants' Motion to Dismiss (Doc. 85).

that an individual named "Justin," who was under his supervision for two years, was a white ticket agent who got a "double promotion" within a few weeks' time. Doc. 84, at 6.[3] Although he does not make the comparison directly in his submission, presumably Plaintiff is relying on the allegation in the SAC that he was repeatedly passed over for promotions. SAC, Doc. 74, at 6. Second, he alleges that in connection with the vacation he took in July 2013, during which he first filed a discrimination complaint with the EEOC, a human resources generalist and the Veolia human resources vice president discussed his EEOC complaint. Doc. 84, at 7-8. According to Plaintiff, the two discussed that "Mr. Workneh left to his country taking unauthorized vacation and then asked Mr. Don if it is ok to terminate Mr. [Workneh] since we don't know where he is." *Id*. at 8. From that snippet of conversation, Plaintiff argues that "Telling someone race/national origin to [human resources] then request hiring or termination is discriminatory." *Id*.

As concerns his FMLA claim, in the SAC Plaintiff alleges that he was an eligible employee entitled to FMLA leave, that he worked at the Company for more than one year, that he worked more than 1250 hours over the course of 12 months, and that the company had more than 50 employees and was otherwise an "employer" within the definition of the FMLA. SAC at 11. He further asserts a continuing series of violations from January through July 2013, during which, he was repeatedly directed to come in to work while home sick. *Id*. at 10-11. Specifically, he alleges that in January 2013 he requested sick leave via text, but was scheduled to work and did report to work while taking over the counter medications. *Id*. at 10. Further, in February of 2013, he went to the hospital and was told by the doctor to stay home for three

---

[3] Due to Plaintiff's failure to number the paragraphs of the Amended Complaint in any consistent fashion, or to number the pages of his other submissions, the Court will refer to the pagination of his filings on the ECF system.

weeks to recover.[4] He alleges that he requested the time off, but was nonetheless scheduled to work. *Id.* When he reported to work, he provided his supervisors with the doctor's note and a "photo copy" of the medications he was prescribed to show the "sever[e]" condition he was in. *Id.* However, even while on leave, he was directed late one evening to open the facility at 4:30 a.m. He called his supervisors to remind them of his status but did not receive a call back, so he reported at 4:30 in the morning to open the facility, and then called to have another supervisor replace him because he was on medication. He left that day at 8:00 a.m. *Id.* Finally, as described in the September 30 Order, in July 2013, he was asked if he could postpone his vacation, which was scheduled for July 7 to July 24, by one week. He said that he could not because his vacation coincided with his "post-surgery appointment." *Id.* at 11. It was during that vacation that he was terminated.

## II.   Procedural History

Plaintiff filed his initial Complaint on April 24, 2015 ("Compl."). Doc. 2. It alleged that Defendants discriminated against him on the basis of his race, color, and national origin by (1) failing to promote him; (2) retaliating against him; (3) terminating him; and (4) creating a hostile work environment, all in violation of Title VII and the NYCHRL. Compl. at 1-3. He also alleged a violation of the FMLA. *Id.* at 3. The Complaint only named Super Shuttle and Airporter as defendants, and did not request a trial by jury. *Id.* at 1. On June 19, 2015, prior to Defendants being served, Plaintiff filed a "Notice of Motion to Amendment," seeking leave to amend the Complaint to add Veolia as a defendant, to request a trial by jury, and to allege a

---

[4] As was the case with his prior submissions, at no time does Mr. Workneh describe the exact nature of his illness or diagnosis.

4

violation of the NYSHRL.  Doc. 9.  The Court granted the motion at a hearing on December 8, 2015, and the Amended Complaint was docketed on December 11, 2015.  Doc. 28.

Defendants Veolia and Airporter motion to dismiss the Amended Complaint was filed on August 15, 2016, Doc. 61, and the motion to dismiss the SAC as against all Defendants, save the retaliation claim, was filed on December 15, 2016.  Doc. 81.

### III. Discussion

#### A. Rule 12(b)(6) Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotation marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The same standard applies to motions to dismiss *pro se* complaints. *See Zapolski v. Fed. Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011). While the Court is duty-bound to construe a *pro se* complaint liberally, *Curcione*, 657 F.3d at 122, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 566 U.S. at 678. A complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *see also Triestman*, 470 F.3d at 477 ("[P]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Additionally, as mentioned above, "[a] district court deciding a motion to dismiss *may* consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (emphasis added).

B. **State Law Discrimination Claims**

The Second Amended Complaint alleges violations of the NYSHRL and NYCHRL. Defendants argue that they are still insufficiently pled. The Court finds that Plaintiff has met the "exceedingly low" burden of demonstrating a plausible minimal inference of discrimination based on race, color, and national origin.

1. **NYSHRL**

To establish a *prima facie* case for employment discrimination under the NYSHRL, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *Soloviev v. Goldstein,* 104 F. Supp. 3d 232, 247 (E.D.N.Y. 2015). As was the case with the Amended Complaint, Plaintiff easily satisfies the first three elements in that he is a black Ethiopian male, and thus in a protected class, provides sufficient information to suggest that he was performing his job competently, and he was terminated, thus establishing an adverse employment action.

However, Plaintiff's allegations concerning the fourth element—whether his treatment took place under circumstances giving rise to the inference of discrimination—is a much closer call. To be sure, "[t]he *sine qua non* of a . . . discriminatory action claim under Title VII is that the discrimination must be because of [the protected characteristic]." *Bivens v. Inst. for Cmty. Living, Inc.*, No. 14 Civ. 7173, 2015 WL 1782290, at *7 (S.D.N.Y. Apr. 17, 2015) (Engelmayer, J.) (internal quotation marks omitted) (emphasis in original) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).

> As the Second Circuit has explained, it is well settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: the employer's criticism of the plaintiff's performance in [ ]

7

> degrading terms [related to the protected characteristic]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of [similarly situated] employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

*Id.* at *8 (internal quotation marks, ellipses, and citations omitted).

At the pleading stage, however, a plaintiff need not plead facts giving plausible support to the "ultimate question" of whether an adverse action was attributable to discrimination; rather, the facts need only give plausible support to a "minimal inference" of discriminatory motivation. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The Second Circuit has clarified that "the inference of discriminatory intent supported by the pleaded facts [need not] be the most plausible explanation of the defendant's conduct. It is sufficient if the inference of discriminatory intent is plausible." *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) (emphasis in original); *see also Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order) ("At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face . . . .").

Such circumstances can include "actions or remarks made by decision makers that could be viewed as reflecting discriminatory animus." *LaSalle v. City of N.Y.*, No. 13 Civ. 5109, 2015 WL 1442376, at *2 (S.D.N.Y. Mar. 30, 2015) (Crotty, J.) (internal quotation marks and citation omitted). "If there is no direct evidence of an employer's discriminatory intent, [p]laintiff then has to show that the employer treated plaintiff less favorab[ly] than a similarly situated employee outside his protected group but who is similar in all material respects to the individual whom he seeks to compare himself with." *Doroz v. Tect Utica Corp.*, No. 12 Civ. 391, 2015 WL 1897134, at *7 (N.D.N.Y. Apr. 27, 2015) (D'Agostino, J.) (internal quotation marks and citations omitted).

As Defendants note, Plaintiff does not include in the SAC allegations that touch upon discriminatory treatment against him *because of* his status as a protected person. In the two documents he filed in response to the motion, however, Plaintiff suggests for the first time that a co-worker named Justin, whom Plaintiff supervised for two years, was treated better because he is white. Doc. 84 at 6. Notably, Plaintiff indicates that Justin was a "very dedicated employee who experienced a lot of challenge[s] from the competitor company" as Plaintiff had himself suffered. Doc. 85 at 17; *see also id*. at 11-12 (noting that Justin had been "attacked" by an employee of the competitor company). However, Plaintiff contrasts the treatment Justin received after the assault (he was transferred from Defendants' Grand Central Station operations to the JFK operations and promptly promoted from ticket agent to supervisor, and then to manager), Doc. 84 at 6-7, with the treatment he received. Namely, that he was disciplined in response to complaining about the hostility to which he was subjected by the competitor company, forced to transfer against his will, never promoted despite promises by the Defendants that they would do so, and ultimately terminated. *Id.* at 7.

The foregoing is sufficient to allow the claim to proceed, but just barely.[5] Plaintiff will ultimately have to establish that Defendants actually treated him less favorably than Justin, that they did so because of Plaintiff's race, color, and national origin, and that Justin is otherwise similar to him in all material respects. *Doroz*, 2015 WL 1897134, at *7. However, at this juncture, the "ultimate question" of whether an adverse action was attributable to discrimination, need not be proven. *Littlejohn*, 795 F.3d at 311. Accordingly, the Defendants' motion to dismiss Plaintiff's claims under the NYSHRL is DENIED.

---

[5] The Court agrees with Defendants, however, that the other incident that Plaintiff relies upon, that two supervisors discussed his country of origin in the context of whether he should be fired for taking an unauthorized vacation, would have been insufficient, by itself, to have raised a minimal plausible inference of discrimination.

2.  **NYCHRL**

Unlike Title VII and NYSHRL claims, "NYCHRL claims . . . are reviewed independently from and more liberally than their federal and state counterparts." *LaSalle*, 2015 WL 1442376 at *3 (internal quotation marks and citation omitted). This means that a complaint may fail to state a claim under Title VII and the NYSHRL, but still be allowed to proceed under the NYCHRL. However, a complaint alleging a NYCHRL claim must still allege facts on the basis of which a court can find differential treatment—*i.e.* the plaintiff was "treated less well— because of a discriminatory intent." *Id.* at *5–*6 (citations omitted). Courts must be mindful that the NYCHRL is not a general civility code; the plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive, *i.e.*, because of the protected characteristic. *See Soloviev*, 104 F. Supp. 3d at 250.

Workneh's allegations must necessarily be sufficient under this more liberal burden for the same reasons set for above. Accordingly, the Defendant's motion to dismiss Plaintiff's claims under the NYCHRL is DENIED.

C.  **Family Medical Leave Act**

In the September 30 Order, the Court dismissed Plaintiff's FMLA claim without prejudice because he failed to allege that he was an eligible employee entitled to FMLA leave, or that Defendant was an employer within the terms of the statute. September 30 Order at 18. As set forth above, Plaintiff has now set forth facts addressing the deficiency identified by the Court: that he was an eligible employee entitled to FMLA leave, that he worked at the Defendant company for more than one year, that he worked more than 1250 hours over the course of 12 months, and that the company had more than 50 employees and was otherwise a "employer" within the

definition of the FMLA. SAC at 11. Defendants concede the sufficiency of the foregoing allegations. Doc. 82 at 5. However, they argue that the claim is still susceptible to dismissal pursuant to Rule 12(b)(6) because Plaintiff has failed to allege "(1) that he had a serious health condition warranting FMLA leave; (2) that he notified Defendants about any serious health conditions under the FMLA; [and] (3) how Defendants interfered with his FMLA rights." *Id.* In so doing, Defendants suggest that Plaintiff's repeated requests to take sick leave over a seven month period, as set forth in both the Amended and Second Amended Complaints, are not sufficient to state an FMLA violation because, when requesting leave, Plaintiff did not utter the letters "FMLA," and did not notify Defendants that he suffered from a "serious medical condition." *Id.*[6]

The FMLA prohibits an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the statute. 29 U.S.C. § 2615(a)(1). To this end, "[t]he FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (citing *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003)). In order to establish a *prima facie* case for interference under the FMLA, Workneh must establish: "1) that he is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that he was entitled to take leave under the FMLA; 4) that he gave notice to the defendant of [his] intention to take leave; and 5) that he was denied benefits to which he was entitled under

---

[6] Noting that "he fails to allege that he notified Defendants of his need to take <u>FMLA leave</u>." *Id.* (emphasis in original).

the FMLA. " *Graziadio v. Culinary Institute of America*, 817 F.3d 415, 424 (2d Cir. 2016); *Kennebrew v. N.Y. City Hous. Auth.*, No. 01 Civ. 1654, 2002 WL 265120, at *19 (S.D.N.Y. Feb. 26, 2002) (Peck, Magistrate J.) (quoting *Santos v. Knitgoods Workers' Union*, No. 99 Civ. 1499, 1999 WL 397500, at *3 (S.D.N.Y. June 15, 1999) (Jones, J.)).

In *Graziadio*, the Second Circuit formally adopted the standard for establishing a *prima facie* case of interference with FMLA rights. *Graziadio*, 817 F.3d at 424. Nothing in the standard established by the Second Circuit requires a plaintiff to state to their employer that the leave being requested is pursuant to the FMLA. Accordingly, even if true that Workneh didn't use the words, the SAC is not deficient on that basis. Workneh has also sufficiently stated how Defendants interfered with his rights. He plainly alleges that on a number of occasions he requested sick leave, provided a doctor's note, and was nonetheless directed to report for work.

However, while Workneh has made additional allegations concerning his requests for leave, noting for example that he provided Defendants a photo copy of the medication which was prescribed and a doctor's note, he has still not provided any information concerning the condition that he suffered from, much less that it was a "serious medical condition" as defined under the statute, to wit, "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital . . . or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see also Higgins v. NYP Holdings*, 836 F. Supp. 2d 182, 193 (S.D.N.Y. 2011) (noting that a serious medical condition is one that involves inpatient treatment or continuing care).

Here, Workneh alleges that he made multiple requests for leave between January and July 2013. It is not at all clear, however, whether those requests related to a continuing or related

condition, which could conceivably create an inference of a serious medical condition, or were simply discrete problems.  *See, e.g.*, *Higgins*, 36 F. Supp. 2d. at 193-94 (finding FMLA claim to be deficient where "[a]t most, the doctor's notes that [plaintiff] submitted with his complaints show three distinct clinical diagnoses rendered at least seven months apart and regarding discrete problems . . . [and] asserts no facts to suggest that these issues were continuing (or related), or that [plaintiff] underwent any continuing course of treatment in response to them").  Moreover, it would require rank speculation for the Court to conclude that the photocopy of the medications he was prescribed, or even that he was told to stay home for three weeks, would have placed Defendants on notice of a serious medical condition as defined in the statute.  Accordingly, Defendant's motion to dismiss the FMLA claim is GRANTED.

However, Plaintiff will be allowed to amend again to include additional information about his medical condition.  The Second Circuit has instructed Courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal quotation marks omitted).  Here, while the Court has already granted Plaintiff the opportunity to amend his original Complaint two times, in *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities*, LLC, 797 F.3d 160 (2d Cir. 2015), the Second Circuit reaffirmed that the "liberal spirit" of the Federal Rule of Civil Procedure 15 embodies a "strong preference for resolving disputes on the merits."  *See id*. at 190-91 (quoting *Williams v. Citigroup Inc*., 659 F.3d 208, 212-13 (2d Cir. 2011)).  *Loreley* thus counsels strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims.

*Id*. at 190-91. As it is not apparent that any further opportunity to amend would be futile, the FMLA claim is dismissed without prejudice.

### IV. Conclusion

For the reasons set forth above, Defendant's motion to dismiss is DENIED in part and GRANTED in part. Specifically:

- The motion to dismiss the NYSHRL and NYCHRL discrimination claims is DENIED; and

- The FMLA claim is dismissed without prejudice.

Plaintiff may file a Third Amended Complaint, titled as such, asserting (1) the Title VII, NYSHRL and NYCHRL retaliation claims, (2) the NYSHRL and NYCHRL discrimination claims, and (3) the FMLA claim. If the Plaintiff chooses to file a Third Amended Complaint, he must do so by **Friday, April 28, 2017**.[7] Otherwise, the matter will go forward only with respect to the retaliation and discrimination claims.

The Clerk of the Court is respectfully directed to terminate the motions, Docs. 61 and 81, and to mail a copy of this Opinion and Order to Plaintiff.

---

[7] Plaintiff is advised that he may seek advice from the new legal clinic opened in this District to assist people who are parties in civil cases and do not have lawyers. The Clinic is run by a private organization called the New York Legal Assistance Group; it is not part of, or run by, the Court (and therefore, among other things, cannot accept filings on behalf of the Court, which must still be made by any unrepresented party through the Pro Se Intake Unit). The Clinic is located in the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York, in Room LL22, which is just inside the Pearl Street entrance to that Courthouse. The Clinic is open on weekdays from 10 a.m. to 4 p.m., except on days when the Court is closed. Plaintiff can make an appointment in person or by calling 212-659-6190.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated:  March 28, 2017
        New York, New York

                                                          Edgardo Ramos, U.S.D.J.